## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARGO STORSTEEN, | : | CIVIL ACTION NO.: |
| | : | |
| Plaintiff, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| MASSACHUSETTS BAY COMMUTER | : | |
| RAIL COMPANY, LLC. a/k/a MBCR, | : | |
| | : | |
| and | : | |
| | : | |
| MASSACHUSETTS BAY | : | |
| TRANSPORTATION AUTHORITY | : | |
| a/k/a MBTA, | : | |
| | : | |
| and | : | |
| | : | |
| KEOLIS COMMUTER SERVICE, LLC | : | |
| a/k/a KCS, | : | |
| | : | |
| Defendants. | : | |

### COMPLAINT

Plaintiff Margo Storsteen, by her undersigned counsel, for her Complaint against defendants Massachusetts Bay Commuter Rail Company, LLC, Massachusetts Bay Transportation Authority, and Keolis Commuter Service, LLC, avers the following:

### THE PARTIES

1.     Plaintiff Margo Storsteen is an adult individual residing at 35 Fisher Road, Arlington, MA  02476.

2.     Defendant Massachusetts Bay Commuter Railroad Company, LLC ("MBCR"), is and was at all times material hereto a Limited Liability Company duly organized and existing under and by virtue of law and was engaged in owning and operating a line and system of railroads and railroad properties as a common carrier of goods and passengers for hire in interstate commerce and transportation in, through and between various and several states of the United States and doing business in the City of Boston, MA.

3.     Defendant Massachusetts Bay Transportation Authority ("MBTA") is and was at all times material hereto a Massachusetts public transportation corporation with a principal place of business located at 10 Park Plaza, Boston, Massachusetts, 02116.

4.     Defendant Keolis Commuter Service, LLC ("KCS") is and was at all times material hereto a Massachusetts public transportation corporation with a principal place of business located at 470 Atlantic Avenue, Boston, MA 02210.

## NATURE OF THE ACTIONS, JURISDICTION AND VENUE

5.     Ms. Storsteen's causes of action against MBCR, MBTA and KCS arise under the Act of Congress of April 22, 1908, 35 Stat. 65, Chapter 149, and amendments thereto, codified at 45 U.S.C. Section 51 et seq., and commonly known as the Federal Employers' Liability Act (the "FELA").

6.     This Court has federal question jurisdiction over Ms. Storsteen's FELA action pursuant to 28 U.S.C. §1331.  This Court also has jurisdiction over Ms. Storsteen's FELA action pursuant to 45 U.S.C. Section 56, which vests the State and Federal Courts with concurrent jurisdiction over FELA claims.

7.     This Court has personal jurisdiction over MBCR, MBTA and KCS. The accident at issue occurred in Massachusetts and MBCR, MBTA and KCS' contacts with Massachusetts are so continuous and systematic as to render MBCR, MBTA and KCS essentially "at home" in Massachusetts, within the meaning of *BNSF Railway Co. v. Tyrell*, 137 S.Ct. 1549 (2017).

8.     Venue is appropriate pursuant to 28 U.S.C. §1391(b)(1) and (c).  MBCR, MBTA and KCS are subject to personal jurisdiction here and so reside in the District of Massachusetts.

## COUNT I
### MARGO STORSTEEN V. KEOLIS
### FEDERAL EMPLOYERS' LIABILITY ACT

9.     Ms. Storsteen hereby restates and reavers as though fully set forth herein the averments contained in Paragraphs 1 through 8, hereinabove.

10.     Defendant KCS was, at the time of the accident and injuries herein alleged, and is now, doing business within the jurisdiction of this Court as an interstate common carrier of passengers for hire by rail into and from Massachusetts.

11.     At the time of the accident and injuries herein alleged, Ms. Storsteen was employed by defendant KCS as an engineer and was working in furtherance of interstate commerce and transportation by railroad.

12.     At all times hereto, KCS owed a duty to its employees, including Ms. Storsteen, to act as a reasonable employer to provide Ms. Storsteen with a safe place to work.

13.     As part of its obligation to provide employees a safe place to work, KCS was required to provide safe walkways clear of ice and other slippery conditions.

14.     At all times material hereto, defendant Keolis operated locomotives, railcars and/or trains owned and /or maintained by defendant MBTA.

15.     On or about February 11, 2015, while performing her duties as an engineer out of defendant's Needham Station, Ms. Storsteen was walking to the platform to inspect Train No. 602 when she slipped on ice and fell onto her hands and knees, causing her to sustain injuries to her knees and back.

16.     As a result of the accident, Ms. Storsteen suffered tears of the anterior horns of the medial and lateral menisci of the right knee, bilateral patellar contusions, bilateral patellofemoral pain syndrome and myofascial pain syndrome, necessitating orthopedic treatment and physical therapy.

17.     Ms. Storsteen's accident and injuries were caused by KCS' negligent violation of the Federal Employers' Liability Act in that KCS, through its agents, servants and employees:

      (a)     Failed to use ordinary care to furnish Ms. Storsteen with a reasonably safe place to work and to perform the duties of her employment;

      (b)     Failed to use safeguards in and around the work area causing a dangerous and/or hazardous condition;

      (c)     Exposed Ms. Storsteen to a platform with ice;

      (d)     Failed to inspect the platform to discover the ice;

      (e)     Failed to salt and shovel the platform;

(f)     Failed to implement and enforce proper procedures and protocols concerning the maintenance of the platform;

(g)     Failed to warn Ms. Storsteen of the slippery conditions; and

(h)     Failed to provide proper supervision of the subject work area and/or employees working in and around the area

18.     Immediately following the accident, Ms. Storsteen was seen in the emergency room at Tufts Medical Center with bilateral knee pain and back pain after slipping on ice at work. Ms. Storsteen was diagnosed with a knee contusion and myofascial lumbar strain, and she was discharged to home with a prescription for Motrin and instructions to follow up with her primary care physician.

19.     On February 13, 2015, Ms. Storsteen was seen by her primary care physician, Dr. Barbara Holbert at Massachusetts General Hospital, for complaints of soreness and stiffness in her knees, back, neck and hands after falling on ice while working. She also complained of pain at the base of her thumb and difficulty with her grip. The doctor diagnosed her with residual pain in her hands, knees and back and recommended that she remain out of work until the following week.

20.     Ms. Storsteen returned to Dr. Holbert for follow up on March 12, 2015. She complained of pain in her knee with prolonged sitting and walking, and discomfort when climbing stairs. The doctor recommended that Ms. Storsteen remain out of work, ordered x-rays of the knees and referred her to physical therapy.

21.    On March 13, 2015, Ms. Storsteen underwent x-rays of both knees at Massachusetts General Hospital.

22.    On April 1, 2015, Ms. Storsteen began a course of physical therapy at Lahey Health.  She attended 12 sessions through May 19, 2015, until the therapy was discontinued by her doctor.

23.    Ms. Storsteen was seen again by Dr. Holbert on April 20, 2015 for follow up. She continued to complain of bilateral knee pain and pain with prolonged sitting and standing. She reported that she had been attending physical therapy for three weeks and that her therapist thought she had bruised her bone along with soft tissue.  Dr. Holbert diagnosed her with bilateral patellar contusions and recommended that she remain out of work, continue with physical therapy and discuss referral to an orthopedic specialist with her physical therapist.

24.    On May 20, 2015, Ms. Storsteen was seen by Dr. Jessica Flynn at Lahey Health orthopedic clinic for evaluation of her bilateral knee pain.  She complained of ongoing patellofemoral pain and difficulty with sitting for prolonged periods of time.  Dr. Flynn diagnosed her with patellofemoral arthritis secondary to exercises at therapy, discontinued physical therapy and requested that Ms. Storsteen return in two weeks for follow up.

25.    On May 21, 2015, Ms. Storsteen returned to Dr. Holbert with complaints of persistent pain under the right and left patella, difficulty with prolonged standing and sitting and climbing stairs and an inability to squat. Dr. Holbert recommended that she remain out of work and follow up with her orthopedist.

26.     Ms. Storsteen returned to Dr. Flynn for follow up on June 4, 2015. She reported that she continued to experience patellofemoral discomfort. The doctor recommended that she follow up with her primary care doctor and return as needed.

27.     Ms. Storsteen saw Dr. Holbert again on June 18, 2015. She complained of ongoing pain and difficulty with prolonged sitting or standing. Dr. Holbert recommended that she remain out of work given her questionable ability to safely operate a train, and she referred Ms. Storsteen to Spaulding Rehab for a work hardening program.

28.     On August 25, 2015, Ms. Storsteen returned to Dr. Holbert for follow up. She complained of an increased burning sensation in her knees and increased pain with standing and sitting, which was more pronounced than before she underwent physical therapy. Dr. Holbert ordered an MRI and provided Ms. Storsteen with a trial of Diclofenac gel.

29.     On August 31, 2015, Ms. Storsteen underwent an MRI of both knees at Massachusetts General Hospital, which revealed tears of the anterior horns of the medial and lateral menisci of the right knee.

30.     Ms. Storsteen returned to Dr. Holbert on September 8, 2015 for follow up and to review the results of her MRI. Dr. Holbert recommended that she continue to remain out of work.

31.     On September 22, 2015, Ms. Storsteen began treating with Dr. Melissa Colbert at Spaulding Rehabilitation Network. At that time, she complained of aching, burning pain in her knees made worse with stairs and hills, transitional movements and prolonged standing. The doctor diagnosed her with bilateral patellofemoral pain syndrome, myofascial pain syndrome

and right medial and lateral meniscus tear and recommended that Ms. Storsteen undergo a series of trigger point injections and attend physical therapy and possibly a work hardening program.

32.     Ms. Storsteen returned to Dr. Colbert on September 30, 2015 with complaints of ongoing severe burning in both knees.  Dr. Colbert administered the first in the series of trigger point injections and referred her to physical therapy.

33.     On October 1, 2015, Ms. Storsteen returned to Dr. Flynn's office for review of her MRI films.   At that time, she continued to complain of burning pain across the anterior aspects of both knees, despite receiving a round of trigger point injections.   Dr. Flynn recommended that she continue with her injections and return if she had any new issues.

34.     Ms. Storsteen was again seen by Dr. Colbert on October 14, 2015.  She reported that the trigger point injections relieved the burning pain in her knees, but she now had pain below the bilateral patella.  Dr. Colbert administered the second trigger point injection in the series and recommended that Ms. Storsteen continue physical therapy.

35.     On October 25, 2015, Ms. Storsteen began a course of physical therapy at Spaulding Outpatient Center.  She attended approximately 16 visits before being discharged on January 15, 2016.

36.     At her October 27, 2015 visit to Dr. Colbert, Ms. Storsteen continued to complain of aching in the knees at the patellar tendon, pain with prolonged standing and crouching, mild muscle cramping at night which interrupted her sleep, and a flare up of knee

discomfort after a long car ride.  Dr. Colbert administered a third trigger point injection and prescribed magnesium glycinate for the muscle cramping.

37.      Ms. Storsteen returned to Dr. Colbert on November 11, 2015 with complaints of ongoing bilateral knee discomfort, which was worse with the rain.  The doctor recommended that Ms. Storsteen attend a work hardening program and follow up as needed.

38.      Ms. Storsteen saw Dr. Holbert on November 19, 2015.  At that time, she complained of discomfort in the lateral aspect of her patella and sharp pain in her knee when bending down.  Dr. Holbert recommended that she continue with physical therapy until the work hardening program started and that she continue to follow up with rehab medicine.

39.      On January 22, 2016, Ms. Storsteen returned to Dr. Holbert for a final follow up.  She reported that she still had some tightness in her knees, but she believed she could return to work.  Dr. Holbert cleared Ms. Storsteen to return to full duty work and advised her to use neoprene braces to help with her symptoms.

40.      All of the above-described injuries and treatment were caused and necessitated by KCS' negligence as averred above.

41.      As a further result of defendant KCS' negligence as averred above, Ms. Storsteen has in the past and will incur in the future substantial medical expenses.

42.      As a further result of defendant KCS' negligence as averred above Ms. Storsteen has endured and will continue to endure serious physical and emotional pain, stress, suffering, immobility and inconvenience.

43.    As a further result of KCS' negligence as averred above, Ms. Storsteen was unable to work from February 12, 2015 through February 22, 2015 and from February 25, 2015 through January 31, 2016, causing her to suffer lost wages and benefits.

**WHEREFORE**, Plaintiff Margo Storsteen demands judgment in her favor and against defendant Keolis Commuter Service, LLC, in an amount in excess of $75,000.00, together with costs, interest and any further relief deemed appropriate by the Court and jury.

## COUNT II
## MARGO STORSTEEN V. MBCR
## (IN NEGLIGENCE)

44.    Ms. Storsteen hereby restates and reavers as though fully set forth herein the averments contained in Paragraphs 1 through 43, hereinabove.

45.    At all times material hereto, defendant MBCR provided public transportation through its commuter rail lines.

46.    Ms. Storsteen's accident, injuries and damages were caused by MBCR's negligence in the following respects:

  (a)    Failed to use ordinary care to furnish Ms. Storsteen with a reasonably safe place to work and to perform the duties of her employment;

  (b)    Failed to use safeguards in and around the work area causing a dangerous and/or hazardous condition;

  (c)    Exposed Ms. Storsteen to a platform with ice;

  (d)    Failed to inspect the platform to discover the ice;

(e)     Failed to salt and shovel the platform;

(f)     Failed to implement and enforce proper procedures and protocols concerning the maintenance of the platform;

(g)     Failed to warn Ms. Storsteen of the slippery conditions; and

(h)     Failed to provide proper supervision of the subject work area and/or employees working in and around the area.

**WHEREFORE**, Plaintiff Charlene Storsteen demands judgment in her favor and against defendant Massachusetts Bay Commuter Rail Company, LLC, in an amount in excess of $75,000.00, together with costs, interest and any further relief deemed appropriate by the Court and jury.

## COUNT III
### MARGO STORSTEEN V. MBTA
### (IN NEGLIGENCE)

47.     Ms. Storsteen hereby restates and reavers as though fully set forth herein the averments contained in Paragraphs 1 through 46, hereinabove.

48.     At all times hereto defendant MBTA provided public transportation through its commuter rail lines to defendant KCS.

49.     Ms. Storsteen's accident, injuries and damages were caused by MBTA's negligence in the following respects:

    (a)    Failed to use ordinary care to furnish Ms. Storsteen with a reasonably safe place to work and to perform the duties of her employment;

    (b)    Failed to use safeguards in and around the work area causing a dangerous and/or hazardous condition;

    (c)    Exposed Ms. Storsteen to a platform with ice;

    (d)    Failed to inspect the platform to discover the ice;

    (e)    Failed to salt and shovel the platform;

    (f)    Failed to implement and enforce proper procedures and protocols concerning the maintenance of the platform;

    (g)    Failed to warn Ms. Storsteen of the slippery conditions; and

    (h)    Failed to provide proper supervision of the subject work area and/or employees working in and around the area.

**WHEREFORE**, Plaintiff Charlene Storsteen demands judgment in her favor and against defendant Massachusetts Bay Transportation Authority in an amount in excess of $75,000.00, together with costs, interest and any further relief deemed appropriate by the Court and jury.

**A jury trial is demanded.**

By: _____

William T. Myers, Jr., Esquire
BBO No. 666006
The Myers Firm
1515 Market Street, Suite 810
Philadelphia, PA 19102
(215) 988-1229

One Boston Place, 26th Floor
Boston, MA 02108
(888) 290-6888
bill@mflaw.com

(*Attorneys for Plaintiff Margo Storsteen*)